UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| TIFFANY D.,[1] | ) |
|         Plaintiff, | ) ) ) |
|         v. | )    No. 4:25-cv-00051-TWP-KMB ) |
| FRANK BISIGNANO, | ) ) |
|         Defendant. | ) |

**REPORT AND RECOMMENDATION ON COMPLAINT FOR JUDICIAL REVIEW**

Plaintiff Tiffany D. applied for supplemental security income on behalf of H.L.D.,[2] a minor, from the Social Security Administration ("SSA") on November 5, 2021. [Dkt. 10-5 at 2.] The Administrative Law Judge (the "ALJ") issued a decision on August 30, 2023, concluding that H.L.D. was not disabled and therefore not entitled to receive the requested benefits. [*Id.* at 18-25.] The Appeals Council denied the request for review on January 16, 2025. [Dkt. 10-2 at 2-7.] On March 21, 2025, Tiffany timely filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g) and 28 U.S.C. § 1361. [Dkt. 1.]

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a Report and Recommendation as to the appropriate disposition of the

---

[1] To protect the privacy interests of claimants for Social Security benefits, and consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first names and last initials of non-governmental parties in its Social Security judicial review opinion.

[2] In accordance with Federal Rule of Civil Procedure 5.2(a), the Court uses the initials of the claimant because claimant is a minor.

Complaint.  For the reasons detailed herein, the Magistrate Judge recommends that the District Judge **AFFIRM** the Commissioner's decision finding that H.L.D. was not disabled.

## I. STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability."  *Biestek v. Berryhill*, 587 U.S. 97, 98 (2019).  While "[s]ocial security disability benefits are designed for disabled workers . . . low-income parents or guardians may obtain them on behalf of disabled children as well."  *Keys v. Barnhart*, 347 F.3d 990, 991 (7th Cir. 2003).  Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision.  *Stephens*, 888 F.3d at 327.  "[S]ubstantial evidence" is "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'"  *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154).  "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled."  *Stephens*, 888 F.3d at 327.  Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'"  *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)).  "[E]ven under deferential standard of review for social security disability cases, an [ALJ] must provide a logical bridge between the evidence and [the]

conclusions." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (internal quotations omitted).

The SSA applies a sequential three-step test for determining whether a child claimant is disabled. 20 C.F.R. § 416.924. Under this test, the ALJ must evaluate the following in sequence:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; and (3) if so, whether the impairment meets, equals or functionally equals an impairment listed in SSA regulations as being presumptively disabling.

*Baker v. Barnhart*, 410 F. Supp. 2d 757, 760 (E.D. Wis. 2005); *see also L.D.R. v. Berryhill*, 920 F.3d 1146, 1150 (7th Cir. 2019). If a child meets or equals a listing, then the child is entitled to benefits "without any further inquiry." *Keys*, 347 F.3d at 992. However, if no listing is met, the ALJ must determine whether the claimant's impairment or combination of impairments functionally equals a listing in one of the six domains of functioning:

> (1) acquiring and using information; (2) attending to and completing tasks; (3) interacting with and relating to other people; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being.

20 C.F.R. § 416.926a(b)(1); *see also L.D.R.*, 920 F.3d at 1150-51. The "domains of functioning" replace the vocational analysis adults undergo with a functional analysis that "inquir[es] into the impact of an impairment on the normal daily activities of a child of the claimant's age." *Sullivan v. Zebley*, 493 U.S. 521, 539-40 (1990). A child is disabled when the ALJ determines they have a "marked" limitation in at least two domains or an "extreme" limitation in at least one domain. 20 C.F.R. § 416.926a(a). The ALJ must consider the combined effect of all medically determinable impairments, not just impairments found to be "severe" at Step Two. *Mosley v. Kijakazi*, 2022 WL 4535203, at *11 (N.D. Ill. 2022). The regulations define a "marked" limitation as one that interferes "seriously" with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i). An "extreme" limitation is one that interferes "very

3

seriously" with the child's ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926a(e)(2)(i). The regulations also provide a corresponding quantitative definition for both "marked" and "extreme" limitations:

> "Marked" and "extreme" limitations in a given domain can be established by standardized test scores that are two or three standard deviations, respectively, below the mean—that is, either in the lowest 2.5 percent of the distribution or the lowest one-half of 1 percent—provided, however, that the scores are representative of day-to-day functioning. 20 C.F.R. §§ 416.926a(e)(2)(iii), 416.926a(e)(3)(iii). Test scores are not conclusive[.]

*Keys*, 347 F.3d at 994.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. "An ALJ's findings are supported by substantial evidence if the ALJ identifies supporting evidence in the record and builds a logical bridge from that evidence to the conclusion." *Giles v. Astrue*, 483 F.3d 483, 486 (7th Cir. 2007). But if the decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review," remand is required. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Additionally, when constructing the logical bridge, the ALJ must be careful not to "play the role of doctor and interpret medical evidence when he or she is not qualified to do so." *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007).

When an ALJ's decision does not apply the correct legal standard, remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). Arguments that are "perfunctory and underdeveloped" by a party are waived. *Hall v. Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018) (internal quotations omitted).

## II. BACKGROUND[3]

H.L.D. was born on October 2, 2015, was a preschooler when the application for benefits was filed, and was a school-age child when the ALJ issued her decision. [Dkt. 10-2 at 19.]

The ALJ followed the three-step sequential evaluation set forth in 20 C.F.R. § 416.924(a) and concluded that H.L.D. was not disabled. [*Id.* at 18-25.] Specifically, the ALJ found as follows:

- At Step One, the ALJ concluded that H.L.D. had not engaged in substantial gainful activity since the application date. [*Id.* at 19.]

- At Step Two, the ALJ found that H.L.D. had the following severe impairments: autism spectrum disorder and a sensory processing disorder. [*Id.*]

- At Step Three, the ALJ concluded that H.L.D. did not have an impairment or combination of impairments that functionally equaled the severity of the listings. [*Id.*] Specifically, the ALJ found that H.L.D. had "less than a marked limitation" in five of the six domains of functioning and "no limitation" in the final domain. [*Id.* at 21-25.]

## III. DISCUSSION

Tiffany raises the following four issues in her opening brief, some of which raise multiple sub-issues: (1) the ALJ failed to build a logical bridge between the evidence and her conclusions and, while doing so, ignored critical lines of evidence; (2) the ALJ's errors cannot be mitigated by the ALJ's reliance on the unsupported and outdated opinions of the state agency consultants; (3) H.L.D.'s conditions meet Listing 112.10 – Autism Spectrum Disorder; and (4) H.L.D.'s conditions functionally equal a Listing. [Dkt. 12 at 9-28.] The undersigned will address each in turn.

---

[3] The relevant evidence of record is set forth in the Parties' briefs and need not be repeated here. Specific facts relevant to the disposition of this case are discussed below as necessary.

A.  **The ALJ's Decision is Supported by Substantial Evidence.**

Tiffany raises multiple arguments regarding the ALJ's evaluation and analysis of the evidence, arguing broadly that the ALJ failed to properly consider and evaluate the evidence. For example, she argues that "by relying on H.L.D.'s ineligibility for special education services, the ALJ ignored evidence that H.L.D.'s limitations are based on social and communicative limitations related to his autism spectrum disorder *rather than a speech or language disorder*." [Dkt. 12 at 11 (emphasis in original).] Tiffany then recites much of the evidence favorable to her position to argue that the ALJ "ignored overwhelming evidence of behavior problems spanning most of H.L.D.'s life" and otherwise failed to properly evaluate certain evidence supporting Tiffany's position. [*Id.* at 12-26.]

The Commissioner argues that the ALJ's reliance on H.L.D.'s ineligibility for special education "misses the bigger picture," noting that this was one piece of evidence among others that the ALJ relied on—including "that no medical or teacher opinion found [H.L.D.] as limited as described by [Tiffany]"—to support the ALJ's ultimate conclusions. [Dkt. 14 at 4.] The Commissioner characterizes "[t]he remainder of [Tiffany's] argument" as "cit[ing] as many abnormal findings as possible before concluding that 'remand is necessary for proper consideration of these statements.'" [*Id.* (citing Dkt. 12 at 12-16).] According to the Commissioner, this argument "is flawed both legally and factually" because the ALJ need not address every piece of evidence and Tiffany "does not direct the Court to a critical piece of overlooked evidence, dispute a Listing or even contest the functional equivalence." [Dkt. 14 at 4-5.]

In reply, Tiffany argues that the ALJ failed to consider significant evidence favorable to H.L.D.'s position, and, "given the totality of the evidence, the ALJ's analysis was insufficient and unsupported." [Dkt. 15 at 6.] In support of these arguments, Tiffany again highlights much of the

6

record evidence set forth in her opening brief that she contends the ALJ ignored or misunderstood. [*Id.* at 6.]

First, the undersigned agrees with the Commissioner that despite many pages of briefing and recitation of evidence, Tiffany neither directs the Court to a critical piece of overlooked evidence or error made by the ALJ nor explains how the evidence undermined the ALJ's ultimate conclusions at Step Three. Put differently, Tiffany asserts that the ALJ failed to build a logical bridge, ignored evidence, and provided an "insufficient and unsupported analysis," but she does not actually explain how those alleged errors undermine the ALJ's ultimate conclusion such that reversal is warranted. Instead, Tiffany's argument is a critique of the ALJ's recitation and evaluation of the evidence. But, as explained above, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Stephens*, 888 F.3d at 327.

Despite its length, Tiffany's briefing on this issue fails to sufficiently explain how, given her critique of the ALJ's assessment of the evidence, reversal is required. The Court "is not responsible for constructing the parties' arguments," and undeveloped arguments such as Tiffany's are waived.[4] *Greenbank v. Great Am. Assurance Co.*, 47 F.4th 618, 629 (7th Cir. 2022). Accordingly, based on waiver alone, the undersigned rejects Tiffany's first argument.

---

[4] Other Judges in this District have previously cautioned counsel for Tiffany against briefing practices similar to those used in this case. *See, e.g.*, *Lonnie H. v. O'Malley*, 2024 WL 6883861, *2 (S.D. Ind. Sept. 26, 2024) (reducing counsel's fee award based on deficiencies in the opening brief "coupled with the numerous (and apparently unavailing) occasions on which we have admonished counsel's kitchen-sink approach"); *Barbara S. v. Saul*, 2020 WL 4499631, *5 (S.D. Ind. Aug. 5, 2020) (noting that counsel "uses a 'shotgun' approach to asserting errors with the ALJ's decision" such that "[v]arious claims . . . are not developed to the point of establishing error, do not fully engage the ALJ's relevant rationale, and/or do not properly analyze the authority they purport to rely upon"). Those briefing practices have seemingly continued and resulted in the waiver of certain claims in this case. The undersigned strongly advises counsel for Tiffany not to continue to use a kitchen-sink approach to briefing social security appeals in this District.

Even if it were not waived, to the extent the undersigned can follow her argument, Tiffany's broad attack on the ALJ's assessment of the evidence is unavailing. While it is always true that the ALJ could have discussed more of the evidence and further explained her analysis, the Seventh Circuit Court of Appeals has repeatedly "emphasized that social-security adjudicators are subject to only the most minimal of articulation requirements." *Thorlton v. King*, 127 F.4th 1078, 1083 (7th Cir. 2025). This requirement is met even when the ALJ provides a "partial summary of select evidence," as "all summaries must be partial and selective." *Gedatus v. Saul*, 994 F.3d 893, 901 (7th Cir. 2021). As the undersigned explains further below when addressing Tiffany's third and fourth arguments regarding the ALJ's Step Three disability determination, the ALJ's assessment of the evidence met this low threshold and "permit[s] meaningful appellate review," which is all that is required. *Thorlton*, 127 F.4th at 1083. For each of these independent reasons, Tiffany's first issue does not warrant reversing the ALJ's decision.

**B.    The ALJ's Reliance on the State Agency Consultants' Opinions was Appropriate**

Tiffany argues that the state agency consultants' opinions were "outdated and incomplete" and thus the ALJ erred in relying on them.[5] [Dkt. 12 at 16-18.] In support of this argument, she points to portions of the stage agency consultants' opinions that she contends were "incomplete" because they "*did not consider* H.L.D.'s social and communication limitations" or they "*cherry-*

---

[5] The heading and first sentence of this argument in Tiffany's brief states that the ALJ's alleged errors cannot be "salvaged by the State Agency opinions, as they were outdated and incomplete." [Dkt. 12 at 16.] If Tiffany's argument is truly just that the ALJ's reliance on state agency consultants' opinions cannot make an otherwise deficient ALJ decision sound, the Court may summarily reject this argument since the undersigned does not otherwise conclude that the ALJ's decision is legally deficient. Because the substance of Tiffany's argument appears to be that it was error for the ALJ to rely on these opinions at all, the undersigned will address that argument instead.

8

*picked evidence suggesting normal functioning*" despite record evidence to the contrary.  [*Id.* (emphases in original).]

The Commissioner argues that the Court cannot conclude that the state agency consultants' opinions were outdated or incomplete when counsel told the ALJ at the administrative hearing that the records before the ALJ were complete.  [Dkt. 14 at 6.]  Even had counsel not, the Commissioner argues that Tiffany has not pointed to any legal authority requiring a heightened articulation requirement for state agency consultants, as there is no such requirement.  [*Id.* at 7.]

Tiffany replies that her argument is not that the record was incomplete, but that "the ALJ erred in treating outdated State agency opinions as persuasive despite overwhelming contrary evidence."[6]  [Dkt. 15 at 11.]  Further, Tiffany contends that the record evidence dated after the state agency consultants' reports was not merely cumulative of what they considered at the time of their evaluations.  [*Id.* at 11-12.]

The undersigned begins by setting forth the state agency consultants' opinions.  H.L.D. was first evaluated by state agency consultant Dr. Shipley in June 2022.  Because H.L.D. did not attend the evaluation, there was insufficient evidence presented to Dr. Shipley to establish a disabling condition.  [Dkt. 10-3 at 4.]  Then, in November 2022, H.L.D. was evaluated at the reconsideration stage by state agency consultants Drs. Horton and Roush.  They concluded that H.L.D. had less than marked limitations in four of the six domains and no limitation in the remaining to two domains, which, if credited, does not indicate disability.  [*Id.* at 11-12.]  The evaluation noted the opinion from Dr. Reeves from September 2022 that H.L.D.'s "psychiatric symptoms and behavior have little negative impact on his daily, social, and academic functioning."  [*Id.* at 13.]

---

[6] Given this articulation of Tiffany's argument in reply, the undersigned need not address the Parties' arguments in the opening brief and response brief regarding the impact of counsel's acknowledgment at the administrative hearing that the record was complete.

9

First, the undersigned rejects Tiffany's argument that the state agency consultants failed to consider certain evidence and "cherry-picked" evidence supporting their conclusion that H.L.D. had normal functioning. The undersigned agrees with the Commissioner that Tiffany fails to point to any legal authority—and the undersigned is aware of none—that requires the state agency consultants to articulate the basis for their assessments in any particular way. The ALJ, of course, must evaluate the state agency consultants' opinions consistent with the factors in 20 C.F.R. § 416.920c, but that requirement applies to the ALJ, not the state agency consultants.

Second, Tiffany maintains that the state agency consultants' opinions were outdated and thus should not have been relied on by the ALJ. To support this contention, she relies on *Moreno v. Berryhill*, 882 F.3d 722 (7th Cir. 2018), where the Seventh Circuit Court of Appeals held that "[a]n ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *Id.* at 728. But critical to the analysis in *Moreno* and the other cases on which it relies is that there was a "significant" development after the medical opinions at issue that rendered those opinions less reliable or in need of further development. *See id.* (noting "significant and new developments in [the claimant's] mental health"); *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2018) (stating that a later medical report "changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment by a non-examining physician and by evaluating himself the significance of [that later report]").

Instead of pointing to a specific medical report or development in H.L.D.'s conditions or symptoms occurring after the state agency consultants' evaluations, like her first argument addressed in Part III.A, *supra*, Tiffany cites a wide range of evidence without tying that evidence to the required legal showing, such as that set forth in *Moreno*. [*See* dkt. 12 at 17-18.] Notably,

some of the evidence she cites pre-dates the state agency consultants' evaluations. [*See id.*] Again, the Court "is not responsible for constructing the parties' arguments," and undeveloped arguments such as this one are waived. *Greenbank*, 47 F.4th at 629.

Even if it were not waived, the evidence Tiffany points to that post-dated the state agency consultants' opinions is similar in kind to the evidence that was already before them when they provided their opinions. For example, Tiffany criticizes the state agency consultants for failing to consider evidence that H.L.D. has difficultly completing tasks without behavioral problems, [*id.* (citing dkt. 10-7 at 61, 71, 241, 243-44)], but the state agency consultants had similar information before them when they evaluated H.L.D. and completed their reports, [*see, e.g.,* dkt. 10-3 at 8-13 (noting evidence that H.L.D. does not complete tasks and has behavior issues including tantrums and physical aggression)]. Therefore, because Tiffany has "not shown that new symptoms emerged or that [H.L.D.'s] condition greatly deteriorated" after the state agency consultants' opinions, this "case is more analogous to more recent authority from the Seventh Circuit Court of Appeals distinguishing the facts of *Moreno*." *April P. v. O'Malley*, 2024 WL 4008738, *6 (S.D. Ind. Aug. 1, 2024); *see Durham v. Kijakazi,* 53 F.4th 1089, 1096 (7th Cir. 2024) (evidence of a 2019 emergency room visit for external shortness of breath and palpitations did not require a new medical opinion because it bore a significant resemblance to a 2017 emergency room visit that was already in the record); *Pavlicek v. Saul,* 994 F.3d 777, 783 (7th Cir. 2021) (evidence of bodily tremors that resulted in emergency room visits did not require new medical opinion because treatment notes regarding tremors were in the record during the agency physician's review). For these reasons, Tiffany has not established any reversible error on this issue.

C. **The ALJ Did Not Err in Concluding that H.L.D.'s Limitations Do Not Meet Listing 112.10**

Tiffany argues that the ALJ failed to properly evaluate whether H.L.D. meets Listing 112.10 – Autism Spectrum Disorder. [Dkt. 12 at 19.] To establish this, Tiffany details the evidence that she maintains supports this conclusion. [*Id.* at 19-24.]

The Commissioner argues that the ALJ properly evaluated whether H.L.D. met Listing 112.10 by citing to the appropriate record evidence, which was also consistent with state agency consultants' and H.L.D.'s kindergarten teacher's assessments. [Dkt. 14 at 8.] Further, the Commissioner points out that Tiffany's argument is merely a recitation of the evidence she believes supports the conclusion that H.L.D. meets Listing 112.10, without confronting or undermining the evidence on which the ALJ relied to reach the opposite conclusion. [*Id.* at 9.]

In reply, Tiffany argues that the "critical evidence" outlined in her opening brief shows that Listing 112.10 is met. [Dkt. 15 at 12-13.]

As noted above, if a child meets or equals a listing, then the child is entitled to benefits "without any further inquiry." *Keys*, 347 F.3d at 992. To meet Listing 112.10, a claimant must satisfy requirement A and B:

> A. Medical documentation of both of the following:
> 1. Qualitative deficits in verbal communication, nonverbal communication, and social interaction; and
> 2. Significantly restricted, repetitive patterns of behavior, interests, or activities.
>
> B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 112.00F):
> 1. Understand, remember, or apply information (see 112.00E1).
> 2. Interact with others (see 112.00E2).
> 3. Concentrate, persist, or maintain pace (see 112.00E3).
> 4. Adapt or manage oneself (see 112.00E4).

20 C.F.R. Pt. 404, Subpt. P., App. 1, § 112.10.

The ALJ set forth the above criteria of Listing 112.10 before analyzing whether H.L.D. met them. [Dkt. 10-2 at 20.] Specifically, the ALJ considered each of the four subsection B criteria and the evidence regarding them in detail, and she concluded that H.L.D. "has no more than a moderate limitation in any of these areas." [*Id.*] For example, regarding H.L.D.'s limitations with respect to understanding, remembering, and applying information, the ALJ acknowledged Tiffany's testimony that H.L.D. had "difficulty in school and difficulty responding to instruction." [*Id.*] But the ALJ then detailed the record evidence including, among other things, that (1) H.L.D. had reading and math scores in the 53rd and 59th percentiles, [dkt. 10-6 at 26]; (2) an evaluation in February 2022 for special education services that showed he was ineligible for such services because he was in the average range for most domains and was "able to give logical answers to higher order thinking questions," [*id.* at 42]; (3) his Auditory Comprehension and Expressive Language Skill scores were in the 30th and 84th percentiles, [*id.*]; and (4) his grades during the 2022-23 school year were straight As, [*id.* at 81]. Given the evidence set forth, the ALJ concluded that H.L.D. had a "moderate limitation" in this area. [Dkt. 10-2 at 20.] The ALJ's assessment of the other three subsection B criteria proceeded in the same manner. [*Id.* at 20-21.]

"When evaluating whether an impairment is presumptively disabling under a listing, the ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Jeske v. Saul*, 955 F.3d 583, 588 (7th Cir. 2020) (internal quotation marks and citation omitted). The foregoing shows that the ALJ did this here. The ALJ evaluated each of the subsection B criteria, cited evidence both supporting limitations in that area and contrary evidence, and based on that evidence, reached supportable conclusions. That is all that is required. *See id.*

Notably, Tiffany does not point to any caselaw or legal authorities in support of her argument that the ALJ's analysis of whether H.L.D. meets Listing 112.10 was deficient. She

13

instead cites substantial evidence that she says support a different conclusion. But this is essentially a request for the Court to reweigh the evidence or substitute the Court's judgment for the ALJ's, which the Court cannot do. *See Fitschen v. Kijakazi*, 86 F.4th 797, 802 (7th Cir. 2023) ("We review the record as a whole but do not substitute our own judgment for that of the Commissioner; we do not reconsider facts, reweigh evidence, resolve conflicts in the evidence, or decide issues of credibility). Accordingly, Tiffany's third argument is not a basis to reverse the ALJ's decision.

**D.  The ALJ Did Not Err in Concluding that H.L.D.'s Conditions Do Not Functionally Equal a Listed Impairment**

Tiffany argues that, even if H.L.D.'s conditions do not meet a Listing, H.L.D.'s conditions functionally equal a Listing. [Dkt. 12 at 24-28.] Much like the above argument regarding whether H.L.D. meets Listing 112.10, in support of this argument Tiffany details evidence regarding each factor that she maintains support a conclusion that H.L.D. has more limitations than the ALJ found. [*Id.*] In so doing, she states that substantial evidence does not support the ALJ's conclusions and that the ALJ ignored important evidence. [*Id.*]

The Commissioner maintains that this argument fails for the same reasons as Tiffany's argument regarding Listing 112.10. [Dkt. 14 at 9-11.] Specifically, the Commissioner explains that the ALJ summarized the record evidence—including the assessments of the state agency consultants and H.L.D.'s kindergarten teacher that supported a finding that H.L.D. was not disabled—and concluded that H.L.D. did not have a marked limitation in any of the six relevant areas. [*Id.*]

In reply, Tiffany argues that the ALJ impermissibly "relied on isolated, surface-level observations while ignoring overwhelming evidence of functional limitations across multiple

domains." [Dkt. 15 at 13.] In support of this, Tiffany attempts to undermine the ALJ's analysis of each of the six domains. [*Id.* at 13-14.]

As explained above, if no listing is met, the ALJ had to next determine whether H.L.D.'s impairment or combination of impairments functionally equals a listing in one of the six domains of functioning:

> (1) acquiring and using information; (2) attending to and completing tasks; (3) interacting with and relating to other people; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being.

20 C.F.R. § 416.926a(b)(1). A child is considered disabled when the ALJ determines they have a "marked" limitation in at least two domains or an "extreme" limitation in at least one domain. 20 C.F.R. § 416.926a(a).

Here, the ALJ began by setting forth the legal standards governing the evaluation of these six domains. [Dkt. 10-2 at 22.] She then set out Tiffany's hearing testimony regarding H.L.D.'s limitations in detail. [*Id.*] The ALJ next evaluated each of the six domains in turn, discussing the record evidence regarding H.L.D.'s limitations in each. [*Id.* at 23-24.] Based on this evidence, the ALJ concluded that H.L.D. has no limitation in moving about and manipulating objects, and less than a marked limitation in the other five domains. [*Id.* at 22-24.] Lastly, the ALJ detailed how she weighed the various medical opinions in the record to reach those conclusions. [*Id.* at 24-25.] Among other things, the ALJ specifically credited the state agency consultant evidence from Drs. Horton and Roush, who concluded that H.L.D. had no limitations in two domains and less than marked limitations in the other four. [*Id.* at 24.]

Tiffany's arguments regarding the ALJ's analysis and conclusion fail for the same reasons as those she presented in Part III.C., *supra*. Tiffany argues at length that the ALJ ignored evidence or that, given other record evidence she points to, the ALJ should have reached a different

15

conclusion. But the ALJ is not required to recite every piece of evidence; summaries are permitted. *See Gedatus*, 994 F.3d at 901. Moreover, although Tiffany contends that "the record contains evidence that could be construed as favorable to [H.L.D.]" that was not cited by the ALJ, Tiffany has "not shown any reason to think the ALJ's summary or determinations are not supported by substantial evidence." *Id.* As noted above, the ALJ detailed much of the evidence showing H.L.D. had limitations but ultimately agreed with the state agency consultants' assessment of those limitations, which were supported by other record evidence.

In the end, "[t]he substantial-evidence standard is not demanding: the term 'substantial evidence' as used here means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Fitschen v. Kijakazi*, 86 F.4th 797, 802 (7th Cir. 2023). The ALJ sufficiently detailed such evidence in her opinion, setting forth evidence supporting her conclusions regarding each of the six domains. Tiffany maintains that the evidence supports a different conclusion, but the undersigned "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus*, 994 F.3d at 901. Accordingly, Tiffany has not presented a basis to reverse the ALJ's disability determination.

## IV. CONCLUSION

For the reasons detailed herein, the Magistrate Judge recommends that the District Judge **AFFIRM** the Commissioner's decision finding that H.L.D. was not disabled. Any objections to this Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). The failure to file objections **within 14 days** of this Order will constitute a waiver of subsequent review absent a showing of good cause for that failure. **Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.**

**SO RECOMMENDED**.

Date: 2/4/2026

*Kellie M. Barr*
Kellie M. Barr
United States Magistrate Judge
Southern District of Indiana

Distribution

All ECF-registered counsel of record via email